1
2
3
4
5
6
7
8  UNITED STATES DISTRICT COURT
9  CENTRAL DISTRICT OF CALIFORNIA
10

11  DANNY T. BENSON,                          )   Case No.  CV 07-4577-JTL
                                              )
12            Plaintiff,                      )   MEMORANDUM OPINION AND ORDER
                                              )
13      v.                                    )
                                              )
14                                            )
    MICHAEL J. ASTRUE,                        )
15  Commissioner of Social Security,          )
                                              )
16            Defendant.                      )
    ──────────────────────────────────────── )
17

18                          **PROCEEDINGS**

19        On July 27, 2007, Danny T. Benson ("plaintiff") filed a Complaint seeking review of the

20  Social Security Administration's denial of his application for Supplemental Security Income

21  benefits.  On August 15, 2007, plaintiff filed a Consent to Proceed Before United States

22  Magistrate Judge Jennifer T. Lum.  On August 17, 2007, Michael J. Astrue, Commissioner of

23  Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate

24  Judge Jennifer T. Lum.  Thereafter, on February 8, 2008, defendant filed an Answer to the

25  Complaint.  On April 14, 2008, the parties filed their Joint Stipulation.

26        The matter is now ready for decision.

27  ///

28  ///

**BACKGROUND**

On June 6, 2000, plaintiff filed applications for Supplemental Social Security Income benefits and Disability Insurance Benefits.  (Administrative Record ["AR"] at 111-13, 554-57).  The Commissioner denied plaintiff's applications for benefits both initially and upon reconsideration.  (AR at 57-60, 62-66, 559, 564).  Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 67).

On June 9, 2003, the ALJ conducted a hearing in Long Beach, California.[1]  (See AR at 588-604).  Plaintiff appeared at the hearing with counsel and testified.  (AR at 602-04).  Joseph E. Jensen, M.D., a medical expert, and Sandra Schneider, a vocational expert, also testified at the hearing.  (AR at 590-600, 600-01).  On June 25, 2003, the ALJ issued her decision denying benefits to plaintiff.  (AR at 49-56).  Plaintiff filed a timely request for review of the ALJ's decision.  (AR at 87-89).  On October 17, 2003, the Appeals Council remanded the matter for further proceedings to allow the ALJ to obtain additional evidence from Alfred M. Bloch, M.D., Ph.D., plaintiff's treating psychiatrist, and Steven Nagelberg, M.D., plaintiff's treating physician who opined plaintiff was temporarily totally disabled, and to obtain supplemental evidence from a vocational expert.  (AR at 90-93).

On April 19, 2004, the ALJ conducted a supplemental hearing in Long Beach, California. (See AR at 605-39).  Plaintiff appeared at the hearing with counsel and testified.  (AR at 628-34).  Medical experts Joseph E. Jensen, M.D. and Charles F. Agler, M.D., and David A. Rinehart, a vocational expert, also testified at the hearing.  (AR at 608-17, 617-28, 638-39).  On August 17, 2004, the ALJ issued her decision denying benefits to plaintiff.  (AR at 17-28).  The ALJ determined that plaintiff had the following severe impairments: lumbar degenerative disc disease, bilateral arthritis in both knees and obesity.  (AR at 27).  The ALJ found that plaintiff's conditions did not meet or equal any of the impairments listed in Appendix 1 of the regulations.  (Id.).  The ALJ determined that plaintiff retained the residual functional capacity to perform a significant range of light work.  (AR at 27-28).  Accordingly, the ALJ concluded that

---

[1] The ALJ previously conducted a hearing on September 26, 2001, which was continued to allow for submission of additional evidence.  (See AR at 570-87).

plaintiff was not disabled through the date of the decision. (AR at 28). The Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (AR at 8-10).

Thereafter, plaintiff appealed to the United States District Court.

## PLAINTIFF'S CONTENTION

Plaintiff makes the following claim:

The ALJ failed to properly evaluate the opinion of Steven Nagelberg, M.D., plaintiff's treating physician.

## STANDARD OF REVIEW

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## DISCUSSION

### A.    The Sequential Evaluation

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner

1 has established a five-step sequential process to determine whether a claimant is disabled.  20

2 C.F.R. §§ 404.1520, 416.920.

3       The first step is to determine whether the claimant is presently engaging in substantially

4 gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging

5 in substantially gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S.

6 137, 141 (1987).  Second, the ALJ must determine whether the claimant has a severe

7 impairment.  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment

8 is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the

9 impediment meets or equals one of the listed impairments, the claimant is presumptively

10 disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment

11 prevents the claimant from doing past relevant work.  Parra, 481 F.3d at 746.  If the claimant

12 cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must

13 determine whether the impairment prevents the claimant from performing any other

14 substantially gainful activity.  Id.

15       The claimant bears the burden of proving steps one through four, consistent with the

16 general rule that at all times, the burden is on the claimant to establish his or her entitlement

17 to disability insurance benefits.  Id.  Once this prima facie case is established by the claimant,

18 the burden shifts to the Commissioner to show that the claimant may perform other gainful

19 activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

20 **B.**    **Steven Nagelberg, M.D.**

21       In the decision, the ALJ notes plaintiff stopped working in October 1999 and filed a

22 workers compensation claim alleging work-related injuries to the low back with radiation to the

23 left leg and headaches.  (AR at 18).  The ALJ then discusses and summarizes the opinion of

24 Dr. Nagelberg.  The ALJ notes plaintiff was "seen by Dr. Steven Nagelberg, his treating doctor,

25 since May 2000" and summarizes Dr. Nagelberg's initial findings:

26           X-rays of the cervical spine, lumbar spine and left knee on May

27           5, 2000 were normal.   The nerve conductions studies

28           suggested L5-S1 radiculopathy on the left [AR at 177-81, 227].

A lumbar spine MRI on May 9, 2000 showed L5-S1 disc degeneration [AR at 247]. An MRI of the left knee on September 4, 2001 revealed a less than 1-cm osteochondral lesion involving the posterior patella and patellofemoral joint and small knee effusion [AR at 345].

(AR at 18-19). The ALJ then noted that Dr. Nagelberg treated plaintiff "conservatively with medications, physical therapy and a weight loss program" and that Dr. Nagelberg had not declared plaintiff permanent and stationary as of the date of the prior decision. (AR at 19).

The ALJ notes that on November 8, 2002, Michael Gitter, M.D. saw plaintiff in Dr. Nagelberg's absence. Dr. Gitter found considerable tenderness in the spine and knees and a restricted range of motion of plaintiff's back. (AR at 19; see AR at 397-99). The ALJ also notes that on June 12, 2003, F. Marina Russman, M.D., who saw plaintiff for pain management, told Dr. Nagelberg that the two lumbar epidural steroid injections he gave plaintiff were helpful. (AR at 19).

The ALJ then discusses the treatment notes of Dr. Nagelberg's Physician Assistant ("PA"). On June 12, 2003, the PA found "negative straight leg raising and full range of motion of the bilateral knees with mild joint line tenderness, some pain on extension of the left knee and no ligamentous instability [AR at 431-32]." The ALJ notes that on June 27, 2003, plaintiff received a third lumbar epidural steroid injection. (AR at 19; see AR at 429).

The ALJ notes that on July 23, 2003, plaintiff told the PA "he finds physical therapy helpful and that the recent epidural injection significantly improved his low back pain [AR at 424]." The ALJ notes that the PA's exam showed improved range of motion, negative straight leg raising bilaterally, intact motor function, strength bilaterally in all muscle groups and that examination of the knees showed full range of motion with tenderness and subpatellar crepitation on the range of motion. (AR at 19; see AR at 425).

The ALJ notes that Dr. Gitter examined plaintiff again on September 10, 2003. At that time, plaintiff stated that physical therapy was helping and Dr. Gitter indicates plaintiff needed a weight control program. (AR at 19; see AR at 415-16). The ALJ notes that on October 28,

1  2003, after Dr. Nagelberg's most recent examination of plaintiff, Dr. Nagelberg continued
2  plaintiff on temporary total disability. (AR at 19; see AR at 409-410).
3  The ALJ then discusses the findings of Larry A. Danzing, M.D., who performed an
4  orthopedic medical examination of plaintiff on June 19, 2003, and of Dr. Jensen, the orthopedic
5  medical expert who testified at the April 19, 2004 ALJ hearing. (AR at 19-20). The ALJ notes
6  that at the hearing, Dr. Jensen pointed out that Dr. Nagelberg found no neurological deficits (AR
7  at 611) and that Dr. Nagelberg's progress notes dated February 21, 2002 did not point to any
8  significant limitations (AR at 613). (AR at 20). The ALJ notes that Dr. Jensen testified that Dr.
9  Nagelberg noted a slight antalgic gait, but it was not that limiting and that plaintiff was not using
10 any assistive ambulatory devices. (AR at 20; see AR at 613). Ultimately, the ALJ relies on Dr.
11 Jensen's opinion to conclude that plaintiff can perform a significant range of light work with
12 some limitations:

13        [Plaintiff is] able to perform light exertional work with the ability
14        to sit, 6 hours in an 8-hour workday with a need to change
15        positions to stand and stretch every 60 minutes, stand and
16        walk 4 hours in an 8-hour workday, no walking up a full flight of
17        stairs but he could manage 3 or 4 steps at a time, with the
18        need to have accessibility to elevators, no climbing ropes,
19        ladders or scaffolds, occasional balancing, stooping, kneeling,
20        crouching and crawling, occasional operation of foot pedals, no
21        working at hazardous heights or with vibratory tools and no
22        walking on rough and uneven surfaces.

23 (AR 27-28; see ARat 20-21).
24 Plaintiff argues that the ALJ improperly ignored Dr. Nagelberg's opinion that plaintiff was
25 temporarily totally disabled during the relevant time period. (Joint Stipulation at 5, 6).
26 Defendant argues that the ALJ properly discussed and considered Dr. Nagelberg's opinion in
27 the decision. (Joint Stipulation at 8). Furthermore, defendant argues that the ALJ did not err
28 in her treatment of Dr. Nagelberg's opinion because the ALJ relied on the opinion of Dr. Jensen,

1  who based his opinion on the medical reports submitted by Dr. Nagelberg and Dr. Gitter.  (Joint

2  Stipulation at 9).  In addition, defendant argues that the ALJ was not required state reasons for

3  rejecting Dr. Nagelberg's opinion that plaintiff was disabled because a treating source's opinion

4  that a claimant is disabled in not entitled to any special weight.  (Joint Stipulation at 7-8, 10).

5          The ALJ is charged with determining a claimant's residual functional capacity based on

6  an evaluation of the evidence as a whole.  See 20 C.F.R. § 416.945.  The medical opinion of

7  a treating physician is entitled to special weight.  20 C.F.R. § 404.1527; Reddick v. Chater, 157

8  F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (the opinions

9  of treating physicians should be given more weight than the opinions of doctors who do not

10  treat the claimant).  The opinions rendered by treating physicians must be weighed using all of

11  the factors provided in 20 C.F.R. Section 404.1527, such as the length of the treatment

12  relationship, frequency of examination, and the nature and extent of the treatment relationship.

13  Social Security Ruling ("SSR")[2] 96-2p; 20 C.F.R. § 404.1527(d)(2). If a treating physician's

14  opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques

15  and is not inconsistent with the other substantial evidence in the record, it will be given

16  controlling weight.  20 C.F.R. § 404.1527.

17          An ALJ may properly reject the opinion of an uncontroverted treating physician only for

18  "clear and convincing" reasons supported by substantial evidence in the record.  Lester, 81

19  F.3d at 830.  An ALJ may properly disregard the controverted opinion of a treating physician

20  only by setting forth specific and legitimate reasons for doing so that are supported by

21  substantial evidence in the record. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  The

22  ALJ can meet this burden by setting out a "detailed and thorough summary of the facts and

23  conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v.

24  Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986).  An ALJ may rely on the absence of objective

25

26          [2] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's
27  regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they
    do not have the force of law, they are nevertheless given deference "unless they are plainly
28  erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.
    1989).

findings to reject a treating physician's opinion.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide specific and legitimate basis for ALJ to reject treating physician's opinion); Buckhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988) (proper to disregard uncontroverted treating physician's opinion when he fails to provide objective descriptions of medical findings).  In addition, an ALJ may reject all or part of an examining physician's report if it contains inconsistencies, is conclusory, or inadequately supported by clinical findings.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

In support of her decision denying benefits to plaintiff, the ALJ notes that Dr. Jensen testified that Dr. Nagelberg found plaintiff has no neurological deficits and that Dr. Nagelberg's progress notes dated February 21, 2002 do not point to any significant limitations.  The ALJ notes that Dr. Jensen acknowledged that Dr. Nagelberg reported a "slight antalgic gait," but found that it was not limiting and notes that plaintiff was not using any assistive ambulatory devices.  (AR at 20).  The ALJ also notes that Dr. Jensen explained that plaintiff's assessed preclusion from walking on uneven surfaces is a prophylactic measure, that is that plaintiff can walk on uneven surfaces, but that it is not recommended.  (AR at 20).

As a treating physician, Dr. Nagelberg's opinion is entitled to deference.  However, the ALJ erred in silently disregarding Dr. Nagelberg's opinion that plaintiff was temporarily totally disabled.  Numerous treatment notes, dated May 2, 2000 through October 28, 2003, state that plaintiff was temporarily totally disabled.  (See AR at 213, 220, 228, 241,  278, 283, 299, 304, 307, 317, 354, 359, 363, 369, 382, 386, 390, 395, 398, 409, 421, 426, 433).   While "[c]onclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ," Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986), the ALJ must still address Dr. Nagelberg's opinion and findings and provide specific and legitimate reasons for rejecting them.  See Cotton, 799 F.2d at 1408 (where treating physician found claimant was totally and permanently disabled, court noted that while Secretary was not obligated to award disability solely on the basis of a treating physician's conclusion, the Secretary must provide a reasoned rationale for disregarding a particular treating physician's finding, and if the evidence was controverted, the ALJ had to privde at least "specific, legitimate reasons" for

1  rejecting it) ; <u>see, e.g.</u>, <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988) (rejecting ALJ's

2  conclusion that claimant was permanently disabled because they were not "sufficiently

3  specific").   The ALJ must do more than offer his conclusions.   He must set forth his own

4  interpretations and explain why they, rather than the doctors', are correct.  <u>Embrey</u>, 849 F.2d

5  at 421-22.  Here, there was no question that Dr. Nagelberg treated plaintiff over a significant

6  period of time and had concluded that plaintiff was temporarily totally disabled.  The ALJ did not

7  provide sufficiently specific or legitimate reasons for ignoring that opinion.  <u>See</u> <u>Orn v. Astrue</u>,

8  495 F.3d 625, 631 (9th Cir. 2007); SSR 96-2p; 20 C.F.R. § 404.1527(d)(2).

9  **C.   <u>Remand is Required to Remedy Defects in the ALJ's Decision</u>**

10         The choice of whether to reverse and remand for further administrative proceedings, or

11  to reverse and simply award benefits, is within the discretion of the Court.  <u>McAlister v. Sullivan</u>,

12  888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional proceedings would

13  remedy defects in the ALJ's decision, and where the record should be developed more fully.

14  <u>Marcia v. Sullivan</u>, 900 F.2d 172, 176 (9th Cir. 1990).

15         Here, the Court finds remand appropriate.  The ALJ failed to provide sufficient reasons

16  to reject the opinion of plaintiff's treating physician.  Although plaintiff strongly argues for an

17  award of benefits, it is not clear that the ALJ would not be able to remedy the deficiency in his

18  opinion on remand.  On remand, the ALJ must fully explain the weight that she assigns to Dr.

19  Nagelberg's opinion.  If the ALJ rejects Dr. Nagelberg's opinion, or the opinion of any other

20  treating physician, the ALJ must make detailed findings setting forth specific, legitimate reasons

21  for doing so, supported by substantial evidence in the record.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 30, 2008

_____
                    /s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE